IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---------------------------------  X

Jiaxiang Ye                                              :

                Plaintiff,      :       Civil Action No.

                               :

    -against-                                        :

The Partnerships and Unincorporated      :       Complaint
Associations Identified on Schedule A,

               Defendants.    :

---------------------------------  X

Plaintiff Jiaxiang Ye (the "Plaintiff") by and through its undersigned counsels, pleads the following against Defendants, The Partnerships and Unincorporated Associations Identified on Schedule A (hereinafter "Defendants"), and alleges as follows:

## I.    THE PARTIES

1.    Plaintiff is the owner of record of the U.S. Patent No. D1,017,877 S ("the '877 Patent," Exhibit A), entitled "Warmer Lamp," which was issued on March 12, 2024 from U.S. Patent Application No. 29/834,114 ("the '114 Application"), filed on April 10, 2022. Plaintiff granted license(s) to certain e-commerce stores on Amazon to sell its patented products under the '877 Patent to consumers in the United States and those in the State of Illinois.

2.    Defendants are Partnerships and Unincorporated Associations Identified on Schedule A. On information and belief, Defendants are based in China and other foreign countries. Defendants sell, offer for sale their counterfeit products that infringe the '877 Patent

1

to consumers in the United States and in the State of Illinois through their e-commerce stores on Amazon.

## II. JURISDICTION AND VENUE

3. This is an action arising under the patent laws of the United States, 35 U.S.C. § 1 et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendants because Defendants have offered for sale, sold, and continue to sell products covered by the '877 Patent ("Infringing Products") to consumers in this district. Screen shots of the checkout pages to purchase Infringing Products from Defendants #1 - #3 on Schedule A for shipping to consumers in this district are attached herein (Exhibit B). This Court also has personal jurisdiction over the Defendants under Rule 4(k)(2) for their violations the federal patent law.

5. Venue is proper in this judicial district because Defendants, as foreign corporations, may be sued in any district pursuant to 28 U.S.C. § 1391(c)(3).

## III. STATEMENT OF FACTS

6. Plaintiff develops, markets, sells and distributes its patented products under the '877 Patent. Plaintiff's patented design has been the subject of substantial and continuous marketing and promotion.

7. Plaintiff has and continues to widely market and promote the patented products in the industry and to consumers. By way of example, but not limitation, they are promoted, marketed and sold on Plaintiff's authorized sellers' websites, social media sites, and on the Amazon platform.

8. Among the purchasing public, Plaintiff's patented products are instantly recognizable as such and are known for their distinctive patented design. This design is well recognized by consumers.

9. Plaintiff is the lawful owner of all right, title, and interest in and to the '877 Patent. Plaintiff has not granted a license or any other form of permission to Defendants to make, use, sell, or offer for sale the patented products disclosed and claimed in the '877 Patent.'

10. Plaintiff's patented products have a distinctive ornamental design which is unique to Plaintiff. Defendants slavish copying of that design is likely to cause confusion to an ordinary observer, such that such a person may buy a copycat product from one of the Defendants thinking it comes from Plaintiff, with its distinctive features and signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products bearing its patented design are manufactured to the highest quality standards. As such, the goodwill associated with the patented products is incalculable and of inestimable value to Plaintiff.

11. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting its patented products. As a result, products bearing the patented design are widely recognized and exclusively associated by consumers, the public and the trade as being products sourced from Plaintiff and its licensees.

12. Defendants are individuals and business entities who, upon information and belief, reside primarily in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of fully interactive e-commerce stores on Amazon. Each

Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell Infringing Products to consumers within the United States, including in Illinois and in this Judicial District. A sample infringing product is directly compared with the claim of the '877 Patent as follows:

| Sample Infringing Product | Claim of the '877 Patent |
|---|---|
|  |  |

13. The success of the patented products has resulted in its infringement. Plaintiff has identified numerous e-commerce stores on Amazon, including the Defendants' e-commerce stores, which were offering for sale, selling, and importing Infringing Products to consumers in this Judicial District and throughout the United States.

14. According to an Intellectual Property Rights Seizures Statistics Report issued by the Department of Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2017 was over $1.21 billion. Internet websites like the Defendants' e-commerce stores are also estimated to contribute to tens of

thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

15. Upon information and belief, Defendants facilitate sales by designing their e-commerce stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine products patented by Plaintiff. Many of the Defendants' e-commerce stores look sophisticated and accept payment in U.S. dollars via credit cards, eBay, Wish, Amazon, Alipay, Alibaba, Walmart and Joom. Defendants' e-commerce stores often include images and design elements that make it very difficult for consumers to distinguish such infringing sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

16. Plaintiff has not licensed or authorized Defendants to use the '877 Patent, and none of the Defendants is an authorized retailer of genuine products patented by Plaintiff.

17. Upon information and belief, Defendants also deceive unknowing consumers by using the design of the '877 Patent without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for products patented by Plaintiff. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendants' e-commerce stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine products patented and sold by Plaintiff.

5

18. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendants' e-commerce stores. For example, many of Defendants' names and physical addresses used to register the Defendants' e-commerce stores are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendants' e-commerce stores use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Defendants' e-commerce store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive infringing operation, and to avoid being shut down.

19. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant e-commerce stores. For example, some of the Defendants' websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, the Infringing Products for sale in the Defendants' e-commerce stores bear similarities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant e-commerce stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

20. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online infringers use a variety of other common tactics to evade enforcement efforts. For example, infringers like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Infringers also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of infringing goods shipped through the mail and express carriers.

21. Further, infringers such as Defendants typically operate multiple credit card merchant accounts and eBay, Wish, Amazon, Alipay, Alibaba, Walmart and Joom accounts behind layers of payment gateways so that they can continue operation despite Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their eBay, Wish, Amazon, Alipay, Alibaba, Walmart and Joom accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of eBay, Wish, Amazon, Alipay, Alibaba, Walmart and Joom transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based eBay, Wish, Amazon, Alipay, Alibaba, Walmart and Joom accounts to China-based bank accounts outside the jurisdiction of this Court.

22. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the '877 Patent in connection with the advertisement,

7

distribution, offering for sale, and sale of Infringing Products into the United States and Illinois over the Internet. Each Defendant's e-commerce store offers shipping to the United States, including to Illinois and, on information and belief, each Defendant has offered to sell and has sold Infringing Products into the United States, including Illinois.

23. Defendants' use of the '877 Patent in connection with the advertising, distribution, offering for sale, and sale of Infringing Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

24. The Defendants create numerous Defendant E-commerce stores on Amazon to sell and offer for sale Infringing Products and design them to appear to be selling genuine Plaintiff's products, while selling inferior imitations of Plaintiff's authorized products. The Defendants' e-commerce stores share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal infringing operation. Plaintiff is forced to file this action to combat Defendants' infringement of the '877 Patent, and to protect unknowing consumers from purchasing unauthorized products over the Internet. Plaintiff has been and continues to be irreparably damaged by infringement of its valuable Patented Design by Defendants and seeks injunctive and monetary relief.

25. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this

8

Judicial District. In addition, each Defendant has offered to sell and ship Infringing Products into this Judicial District.

26. Each of the Defendants offered for sale or sold Infringing Products, through the links identified in Schedule A in the U.S. and in the State of Illinois.

**COUNT I. INFRINGEMENT OF UNITED STATES DESIGN PATENT (35 U.S.C. § 271)**

27. Plaintiff repeats and incorporates by reference herein the allegations in paragraphs above.

28. Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use products that infringe directly and/or indirectly the ornamental design claimed in the '877 Patent.

29. Defendants have infringed the '877 Patent through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

30. Plaintiff is entitled to recover damages adequate to compensate for the infringement, including Defendants' profits pursuant to 35 U.S.C. § 289. Plaintiff is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily preliminarily, and permanently enjoined and restrained from:

a. using the '877 Patent or any reproductions, infringing copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any products that are not genuine products from the Plaintiff or are not authorized by Plaintiff;

b. passing off, inducing, or enabling others to sell or pass off any products as genuine products covered by the '877 Patent or any other products produced by Plaintiff that are not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale;

c. committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the '877 Patent and damaging Plaintiff's goodwill;

e. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Patented Design of Plaintiff, or any reproductions, infringing copies, or colorable imitations thereof;

f. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain

name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Infringing Products; and

  g. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product covered by the '877 Patent or any reproduction, infringing copy or colorable imitation thereof that is not a genuine product covered by the '877 Patent or is not authorized by Plaintiff.

  2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to filed with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through g, above;

  3) Entry of an Order that, at Plaintiff's choosing, the host of Defendants e-commerce stores, including, but not limited to, Amazon shall disable the Defendant's e-commerce stores and make them inactive and untransferable;

  4) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as Amazon, web hosts for the Defendants' domain names, and domain name registrars, shall:

  a. disable and cease providing services for any accounts through which Defendants engage in the sale of cutting tools which infringe the '877 Patent, including any accounts associated with the Defendants listed in Schedule A;

  b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products; and

      c.     take all steps necessary to prevent links to the Defendants' e-commerce stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendants' e-commerce stores from any search index.

    5)     That the amount of damages awarded to Plaintiff to compensate Plaintiff for infringement of the '877 Patent be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

    6)     In the alternative, that Plaintiff be awarded all profits realized by Defendants from Defendants' infringement of the '877 Patent pursuant to 35 U.S.C. § 289;

    7)     That Plaintiff be awarded its reasonable attorneys' fees and costs; and

    8)     Award any and all other relief that this Court deems just and proper.

Dated: April 9, 2024                    Respectfully submitted,

                                                            */s/Lance Liu*
Robert D. Katz, Esq.
katzr@kitchanlaw.com
Lance Y. Liu, Esq.
lanceliu2000@gmail.com
Law Offices of Albert Wai-Kit Chan, PLLC
141-07 20th Avenue
Whitestone, NY 11357
(718) 799-1000
Attorneys for Plaintiff